# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LOUIS DALE,

    *Petitioner*,

v.

ROBERT GILMORE, *et al.*,

    *Respondents*.

CIVIL ACTION
NO. 16-1345

**PAPPERT, J.**                                                                   February 20, 2018

<u>**MEMORANDUM**</u>

Louis Dale filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Petition, ECF No. 1.) Magistrate Judge Heffley subsequently issued a Report and Recommendation (R&R) recommending the Petition's denial. (ECF No. 16.) Dale did not file any objections and the Court approved and adopted the R&R after reviewing it for clear error. (ECF No. 19.) Dale then filed a Motion for Reconsideration, alleging that he never received a copy of the R&R in prison and thus was unable to file timely objections. (ECF No. 20.) The Court granted Dale's Motion, vacated its Order and reopened the case to allow Dale to submit objections, which he timely filed. (ECF Nos. 25, 26.) Upon consideration of the record, Magistrate Judge Heffley's R&R, and Dale's objections thereto, the Court adopts the R&R and denies Dale's Petition.

I

A

On the evening of December 4, 2009, two men and a woman in a mini-van robbed a man at gunpoint outside his home in Yeadon, Delaware County, Pennsylvania,

1

stealing his cell phone. (Traverse/Reply, ECF No. 15.) The victim subsequently identified Dale from a photo array as one of the men who robbed him (*id.*) and on February 4, 2010, Dale was charged with robbery (18 Pa. Const. Stat. § 3701) and possessing instruments of a crime (18 Pa. Const. Stat. § 907). *Commonwealth v. Dale*, No. CP-23-CR-1184-2010 (Pa. Ct. Com. Pl. Del. Cnty. June 17, 2015) [hereinafter "PCRA Op."].

At trial, the victim testified that he was walking home on the sidewalk when a beige van without hubcaps stopped quickly and double parked in the street next to him. (Trial Tr., July 13, 2010, 169:15-21, 170:5-9.) The Commonwealth introduced into evidence photos of Dale's van which the victim identified as the same van carrying his assailants. (*Id.* at 185-188.) He testified that the driver, Dale, was 5' 8" to 5' 9" and wearing a black hoodie and black Dickie cargo pants, (*id.* at 172:13-19), matching the description the victim gave police during the initial investigation (Traverse/Reply, ECF No. 15). The Commonwealth also introduced into evidence, by stipulation of the parties, a black long sleeve shirt and black Dickies pants worn by Dale when he was arrested. (Trial Tr., July 14, 2010, Vol. 1, 6:10-22.)

The victim's mother testified that while looking outside the window in her home, she saw the beige van stopped in front and assumed the neighbors had visitors, someone was receiving a food delivery, or the driver was showing off his car. (*Id.* 238:11-25.) Immediately after the van drove off, her son banged on her front door and said, "I just got robbed." (*Id.* 239:5-10.) A Yeadon Police Department detective then testified about his interview with the victim a day or two after the robbery. (*Id.* 259:1-10.) In the interview, the victim described the van and identified Dale from a photo

array. (*Id.* 259:5-17, 261:10-25.) Shavon Jenkins also testified that Dale was with her and their children watching TV at her home in Darby, Pennsylvania on the night of the robbery. (Trial Tr., July 14, 2010, Vol. 2, 11:4-12:12.) The jury convicted Dale on all charges on July 14, 2010 (PCRA Op. at 1) and he was sentenced to twenty years' imprisonment for the robbery, with a two year concurrent sentence for possessing instruments of a crime (Sentencing Tr., Sept. 28, 2010, 27:9-22).

B

Dale presented one issue in his appeal to the Pennsylvania Superior Court: whether the trial court erred when it failed to question potential jurors during *voir dire* about their ability to follow an instruction requiring them to return a unanimous verdict. *Commonwealth v. Dale*, No. 2944-EDA-210 (Pa. Super. Ct. Sept. 9, 2011). The Superior Court found that Dale waived the *voir dire* issue and affirmed the convictions. *Id.* Dale subsequently filed a Petition for Allowance of Appeal with the Pennsylvania Supreme Court, which was denied. *Commonwealth v. Dale*, No. 765 MAL 2011 (Pa. Jan. 5, 2012).

Dale filed a petition for relief under the Pennsylvania Post Conviction Relief Act ("PCRA") on March 28, 2012. (PCRA Op. at 4.) Counsel was appointed to represent Dale, but sought leave to withdraw after investigating Dale's claims, stating that the claims lacked merit. (PCRA Op. at 5; No Merit Letter, Aug. 15, 2013.) The PCRA Court allowed Dale's counsel to withdraw and on June 17, 2015 denied Dale's petition. (PCRA Op.) The Superior Court denied Dale's appeal and adopted the PCRA Court's opinion. *Commonwealth v. Dale*, No. 3565 EDA 2014 (Pa. Super. Ct. Nov. 17, 2015). Dale filed his Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 in this

3

Court on March 22, 2016. (Petition, ECF No. 1.) In his Petition, Dale contends that his trial counsel provided ineffective assistance and that his Sixth and Fourteenth Amendment rights were violated. (*Id.*)

II

A

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") limits federal courts' power to grant writs of habeas corpus. Under the Act, "a federal court may not grant a habeas corpus application 'with respect to any claim that was adjudicated on the merits in State court proceedings,' 28 U.S.C. § 2254(d), unless the state court's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States….'" *Berghuis v. Thompkins*, 560 U.S. 370, 380 (2010). A state court ruling is "contrary to" clearly established Federal law if the court applies a rule that contradicts governing law set by the Supreme Court or if the court confronts a set of facts that are materially indistinguishable from a Supreme Court decision but arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406–07 (2000). A state court ruling "is considered an 'unreasonable application' if the state court unreasonably applies the correct legal rule to the particular facts, unreasonably extends a legal principle to a new context, or unreasonably refuses to extend the principle to a new context where it should apply." *McMullen v. Tennis*, 562 F.3d 231, 236 (3d Cir. 2009).

B

The Supreme Court's two-part test in *Strickland v. Washington* governs claims for ineffective assistance of counsel. 466 U.S. 668 (1984). "To succeed on such a claim,

the petitioner must demonstrate (1) that counsel's performance was deficient, in that it fell below an objective standard of reasonableness, and (2) that the petitioner suffered prejudice as a result of the deficiency." *Blystone v. Horn*, 664 F.3d 397, 418 (3d Cir. 2011) (citing *Strickland*, 466 U.S. at 687)). With respect to *Strickland*'s first prong, there is a "strong presumption" that counsel's performance was not deficient. *Jermyn v. Horn*, 266 F.3d 257, 282 (3d Cir. 2001). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. Where "the record does not explicitly disclose trial counsel's actual strategy or lack thereof (either due to lack of diligence on the part of the petitioner or due to the unavailability of counsel), the presumption may only be rebutted through a showing that no sound strategy…could have supported the conduct." *Thomas v. Varner*, 428 F.3d 491, 500 (3d Cir. 2005). With respect to prejudice, the defendant must show "that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. To make this showing, the "[d]efendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). The Court must consider the totality of the evidence before the jury in determining whether a petitioner satisfied this standard. *See Berghuis*, 560 U.S. at 389.

When reviewing an ineffective assistance of counsel claim under § 2254(d)(1), the court must "determine what arguments or theories supported…the state court's

5

decision," and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Harrington*, 562 U.S. at 102. A determination that a state court's analysis is contrary to or an unreasonable application of clearly established law is not alone sufficient to grant habeas relief. *See Vickers v. Superintendent Graterford SCI*, 858 F.3d 841, 849 (3d Cir. 2017). When a federal court reviewing a habeas petition concludes "that the state court analyzed the petitioner's claim in a manner that contravenes clearly established federal law, it then must proceed to review the merits of the claim de novo to evaluate if a constitutional violation occurred." *Id.* (citing *Lafler v. Cooper*, 566 U.S. 156, 174 (2012)).

III

Dale asserts five objections to the R&R. "[F]or the portion of the R&R to which no objection [is] made, the Court reviews the R&R for clear error."[1] *Harris v. Mahally*, No. 14-2879, 2016 WL 4440337, at *4 (E.D. Pa. Aug. 22, 2016). The Court reviews *de novo* the specific portions of the R&R to which a party objects. *See* 28 U.S.C. § 636(b)(1); *see also Cont'l Cas. Co. v. Dominick D'Andrea, Inc.*, 150 F.3d 245, 250 (3d Cir. 1998). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

---

[1] When reviewing those portions of the report to which no objection is made, the Court should, as a matter of good practice, "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b) advisory committee notes; *see also Oldrati v. Apfel*, 33 F. Supp. 2d 397, 399 (E.D. Pa. 1998). For the portions of the R&R to which Dale has not objected, no clear error appears on the face of the record and the Court accordingly accepts Judge Heffley's recommendation.

6

A

Dale asserts three objections to the R&R related to his ineffective assistance of counsel claims: (1) the Magistrate Judge erroneously determined that his claim that trial counsel was ineffective for failing to call additional alibi witnesses was meritless; (2) the Magistrate Judge mischaracterized his claim pertaining to the introduction of his clothing and pictures of his van into evidence; and (3) the Magistrate Judge misinterpreted his claim regarding counsel's failure to investigate Shaykia Cherry. The Court will address each in turn.

i

Dale's trial counsel called one alibi witness but decided not to call three additional alibi witnesses, Dale's children, Turquoise and Isaiah Mathews and Dale's sister, Natasha Dale. The Magistrate Judge concluded that Dale's argument was meritless because the PCRA court found that his trial counsel interviewed the witnesses and subsequently made a strategic decision not to call them. (R&R, at 7.) The PCRA court's finding was based on PCRA counsel's No Merit Letter in which he explained that upon reviewing trial counsel's decision, it was reasonable and strategic because the witnesses would not have provided helpful testimony. (PCRA Op. at 71.) In his objection, Dale contends that the PCRA court should have conducted an evidentiary hearing to determine whether or not trial counsel made a sound strategic decision instead of relying on PCRA counsel's No Merit Letter and out of court statements that trial counsel made to PCRA counsel.[2] (Pet. at 2.)

---

2  There is no evidence in the record that trial counsel made any statements to PCRA counsel. PCRA counsel reviewed trial counsel's case file.

7

A PCRA petitioner is not automatically entitled to an evidentiary hearing. *Commonwealth v. McBride*, No. 2187 EDA 2015, 2017 WL 362616, at *3 (Pa. Super. Ct. Jan. 25, 2017). The court may dismiss a petition without a hearing if it finds that the petitioner's claims are "patently frivolous," *Commonwealth v. Payne*, 794 A.2d 902, 906 (Pa. Super. Ct. 2002), and the court gives notice to the parties of its intention to dismiss the petition without a hearing, PA. CRIM. P. 907. The PCRA court issued a Notice of Intent to Dismiss Without a Hearing on July 29, 2014. (Notice of Intent, *Commonwealth v. Dale*, No. 1184-10, (Pa. Ct. Com. Pl. Del. Cnty. July 29, 2014)). The court explained that there were no genuine issues of material fact and that Dale's claim was meritless. (*Id.*) In its opinion, the court further explained that trial counsel's performance was not deficient because he interviewed four alibi witnesses, presented one at trial, and determined that three of them would not provide exculpatory testimony. (PRCA Op. at 70-72.) Dale provided no evidence to the contrary. Under AEDPA, unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law, the court may not grant a habeas petition. Here, no fair-minded jurists would disagree that the PCRA court properly dismissed Dale's PCRA petition without a hearing because the court's decision was not inconsistent with Supreme Court precedent.[3]

---

[3] Because the state court's analysis did not contravene clearly established federal law, the Court does not need to review the merits of the claim *de novo* to determine if a constitutional violation occurred. *See Vickers v. Superintendent Graterford SCI*, 858 F.3d 841, 849 (3d Cir. 2017) (citing *Lafler v. Cooper*, 566 U.S. 156, 174 (2012)). In any event, Dale fails to satisfy *Strickland*'s first prong, requiring that he demonstrate that counsel's decision not to call three additional alibi witnesses fell below an objective standard of reasonableness. Because the record does not explicitly disclose trial counsel's actual strategy, the presumption that counsel was not deficient can only be rebutted through a showing that no sound strategy could have supported the conduct. *See Thomas v. Varner*, 428 F.3d 491, 500 (3d Cir. 2005). This is not the case here. Trial counsel presented an alibi witness. The three other potential witnesses were related to Dale and their testimony would have

In his second objection, Dale contends the Magistrate Judge mischaracterized his claim pertaining to the introduction of his clothing and pictures of his van into evidence. In regards to the clothing, Dale argues that trial counsel should not have stipulated to the admission of the clothing he was wearing when he was arrested—a black long sleeve shirt and black Dickies pants. (Trial Tr., July 14, 2010, Vol. 1, 6:10-22.) Dale asserts that counsel should have objected to its admission because it was the clothing he wore during the arrest which occurred days after the robbery and did not perfectly match the description of clothing provided by the victim. Although the Magistrate Judge determined that counsel was not deficient when failing to file a motion to suppress evidence because there was no constitutional violation (R&R, at 8), she did not address Dale's additional argument that counsel was ineffective for also failing to object.[4] The PCRA court addressed the objection issue and correctly determined that trial counsel's performance was not deficient. (PCRA Op. at 59.) As long as counsel's tactical decision can "be seen as reasonably undertaken to effectuate [the] defendant's interest" any challenge to that decision fails. (*Id.* (citing *Commonwealth v. Mickens,* 597 A.2d 1196, 1202 (Pa. Super. Ct. 1991).) The PCRA court reasoned that when the Commonwealth introduced evidence of a *black long sleeve shirt*, it created an inherent conflict with the victim's testimony because he reiterated that Dale was wearing a *black hoodie*. (PCRA Op. at 55.) The PCRA Court's decision

---

had "significantly less exculpatory value than the testimony of [] objective witness[es]." *See Hess v. Mazurkiewicz,* 135 F.3d 905, 909 (3d Cir. 1998).

[4] Dale raised the suppression issue and counsel's failure to object in his initial PCRA petition. (Petition for Post-Conviction Collateral Relief, CP-23-CR-1184-2010, at 13, 20.) He subsequently raised the objection issue in his Petition to this Court. (Petition, at 6.)

9

was not contrary to or involved an unreasonable application of federal law. The record makes clear that trial counsel's decision to stipulate to the admission of the evidence bolstered the defense's theory that Dale was not the robber. In his closing argument, trial counsel attacked the victim's credibility and highlighted the inconsistences in the victim's testimony. (Trial Tr., July 14, 2010, 50:2-9, 53:10-12.)

Dale argues that trial counsel should have objected to the admission of the pictures of his van because the van was gray, not beige like the victim described. In his closing argument, counsel pointed out that Dale's van was gray, as shown in the photos of the van that were admitted into evidence. (*Id.*) Counsel used this inconsistency to argue that the case was really about mistaken identity and that the victim was not credible. (*Id.* at 58:12-15 ("We have one incident but almost three different versions of what happened from the same person. We have three different descriptions, all not accurate.").) The record demonstrates that trial counsel's decision not to object to the van photographs bolstered the defense's theory that Dale was not the robber.

iii

Finally, Dale asserts that the Magistrate Judge mischaracterized his claim regarding counsel's ineffectiveness as it relates to Shaykia Cherry. One of the police reports indicated that the victim contacted the police and told them that a woman named Shaykia Cherry sent him a message through Facebook. In the message, she asked the victim for the code to his cell phone so that she could download pictures. (Traverse/Reply, Ex. A.) This is the only mention of Cherry in the entire record. The Magistrate Judge explained that Dale's claim that trial counsel was ineffective *for failing to locate and present Cherry* was meritless. (R&R, at 10.) In his objection, Dale

contends that counsel was *also* ineffective for *failing to investigate* Cherry and for failing to request an "investigation report" of Cherry. These objections lack merit.

The PCRA Court correctly determined that because Dale's argument—that counsel was ineffective for failing to investigate Cherry—was speculative, he was unable to show that he suffered the requisite prejudice under *Strickland*. (PCRA Op. at 34.) To do so, Dale must have shown that there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Rolan v. Vaughn*, 445 F.3d 671, 682 (3d Cir. 2006) (citing *Strickland*, 466 U.S. at 694). The showing cannot be based on "mere speculation about what the witnesses [that counsel] failed to locate *might* have said." *Rolan*, 445 F.3d at 682 (citing *United States v. Gray*, 878 F.2d 702, 712 (3d Cir. 1989) (emphasis added)). Dale does not provide any substantive information as to what Cherry's testimony would have been or show that it would have caused the result of the proceeding to be different.

Further, the record does not indicate that there was an "investigation report" of Cherry. The record includes a police report containing information about Cherry— which Dale received. At trial, Dale admitted that he had the chance to review "line by line" the police reports with his attorney. (Trial Tr., July 13, 2010, 11:11-16.) Dale also included this report in his Traverse/Reply in his Petition to this Court. (Traverse/Reply, Ex. A.) Additionally, the record proves that Dale's trial counsel made a request for police reports, cell phone records and records of a photo array. Omnibus Pre-Trial Motion at 3 ¶ 5(b), *Commonwealth v. Dale*, CP-23-CR-1184-2010 (Pa. Ct. Com. Pl. Del. Cnty. Apr. 5, 2010); Mot. to Compel Discovery, *Commonwealth v. Dale*, CP-23-CR-1184-2010 (Pa. Ct. Com. Pl. Del. Cnty. June 3, 2010); No Merit Letter, at 8.

B

In addition to his objections to the Magistrate Judge's findings with respect to his ineffective assistance claims, Dale asserts that the Magistrate Judge mischaracterized his claim pertaining to allegedly exculpatory evidence. In his PCRA Petition, Subsequent Petition, Amended Subsequent Petition and Petition for a Writ of Habeas Corpus, Dale alleges that his counsel was ineffective for failing to *request* cell phone records. In his objection, Dale acknowledges that his counsel did make a request for the records. Only in his reply brief and objections does Dale allege for the first time that he suffered a *Brady* violation because he never actually *received* the records. Federal courts cannot grant habeas relief to a petitioner who has not exhausted the remedies available in state courts. *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997), *as amended* (Jan. 16, 1998). To properly exhaust a claim in state court, the petitioner must have "fairly presented" the claim to the court. *Bronshetin v. Horn*, 404 F.3d 700, 725 (3d Cir. 2005). A fairly presented claim is one that has been through one complete round of the state's established appellate review process. *Woodford v. Ngo*, 548 U.S. 81, 91 (2006). Dale's alleged *Brady* violation is procedurally defaulted.[5]

C

In his final objection, Dale contends that although Magistrate Judge Heffley "determined that a few of his claims [] were procedurally defaulted," he qualifies for an exception under *Martinez v. Ryan*. At the outset, the Magistrate Judge only determined that two of Dale's claims were procedurally defaulted. (R&R, at 14-15.) These include Dale's claim that his trial counsel was ineffective for failing to object to

---

[5] In any event, the No Merit Letter filed by Dale's PCRA attorney indicates that trial counsel received cell phone records and determined that they contained no beneficial information. (No Merit Letter, at 8.)

12

the prosecution's peremptory strike of the single African-American juror and that he did not have a jury of his peers in violation of *Batson v. Kentucky*. (*Id.*)  Dale's objection is overruled for two reasons.

First, procedural default can be excused if the petitioner proves "cause" and "prejudice." *Glenn v. Wynder*, 743 F.3d 402, 409 (3d Cir. 2014).  "Under *Martinez,* the failure of collateral attack counsel to raise an ineffective assistance of trial counsel claim in an initial-review collateral proceeding can constitute 'cause' if (1) collateral attack counsel's failure itself constituted ineffective assistance of counsel under *Strickland* and (2) the underlying ineffective assistance of trial counsel claim is 'a substantial one,' which is to say 'the claim has some merit.'" *Id.* at 410 (citations omitted).  That is not the case here.  Dale's claim would fail because he did not produce any evidence to establish a claim of discriminatory use of peremptory challenges.  *See Williams v. Beard*, 637 F.3d 195, 214 (3d Cir. 2011).  There is also no evidence of the race of potential jurors nor is there evidence that the prosecution struck a juror on an improper basis.

Second, Dale did not present to Magistrate Judge Heffley the argument that *Martinez's* procedural default exception applies to his claims.  Under Local Rule of Civil Procedure 72.1 IV(c):  "All issues and evidence shall be presented to the magistrate judges, and unless the interest of justice requires it, new issues and evidence shall not be raised after the filing of the Magistrate Judge's Report and Recommendation if they could have been presented to the magistrate judge."  *See also Fowler v. Mooney*, No. 14-1768, 2015 WL 6955434, at *1–2 (E.D. Pa. Nov. 9, 2015); *Yarbrough v. Klopotoski*, No. 09-336, 2009 WL 4673862, at *1–2 (E.D. Pa. Dec. 8, 2009).  Dale could have argued this

exception to the magistrate judge but failed to do so. The interest of justice does not require the Court to address it now because as explained *supra,* there is no evidence to support Dale's claims.

 An appropriate order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***
GERALD J. PAPPERT, J.